IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REIS ROBOTICS USA, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | Judge Ruben Castillo |
| Plaintiff, | ) | |
| v. | ) | Case No. 06 C 01430 |
| | ) | |
| CONCEPT INDUSTRIES, INC., | ) | |
| a Michigan corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**REIS ROBOTICS, USA, INC.'S CONSOLIDATED REPLY
IN SUPPORT OF ITS MOTIONS TO STRIKE COUNTERCLAIMS,
AFFIRMATIVE DEFENSES AND PORTIONS OF DEFENDANT'S ANSWER**

**INTRODUCTION**

Concept concedes that absent fraud, the relationship between the parties is governed by the written agreement attached to its pleadings. Although Concept urges the court to convert the litigation into a factual dispute, its Response highlights that no set of facts consistent with its allegations can properly avoid dismissal of the counterclaim, affirmative defenses, and portions of its answer as a matter of law.

To facilitate its position, Concept assigns to the jury the Court's province of construing the contract, posits facts inconsistent with its pleadings, cites case law that does not support its positions, ignores the authorities cited by plaintiff, misstates court rulings, changes its theories/arguments,[1] and asserts arguments that have no application to the issues or the contract terms. Having been independently desourced by its own customer from two of the programs for which Concept purchased the versatile Laser, Concept persists in its futile effort to find a way to avoid its contractual obligation on a purchase that apparently no longer made financial sense for the fabrication of a single part. (see Resp. Memo., p. 1; CC.)

---

[1] To keep track of Concept's ever-changing claims, Reis has prepared a chart attached as Exhibit A.

**ARGUMENT**

**I. Concept's Underlying "Failed Application" Theory Is Fundamentally Flawed.**

Concept's opening analogy--that it claims characterizes the gist of its counterclaims and defenses--reveals the misconceptions and fundamental legal flaws of its arguments. Concept writes:

> The parties' dispute can be analogized to the purchase of a car that the dealer represented could achieve speeds of 60-70 miles per hour, but which could not exceed 25 miles per hour after purchase. The severity of that defect calls into serious question whether the product is even a "car" at all, regardless of whether the buyer procured a warranty that the vehicle would be able to operate at 60-70 miles per hour.

While the flaws in the analogy are manifold, one glaring error is the notion that the "severity of that defect calls into serious question whether the product is even a 'car' at all." Of course it is a car. No court would say that a car that goes only 25 miles per hour is "not a car." Rather, the court would consider whether the dealer had breached the implied warranty of fitness for a particular purpose, the implied warranty of merchantability, or some other contract term. The court would not say no "car" was ever delivered. Similarly, no court could reasonably conclude that a part-cutting Laser is not a part-cutting Laser simply because it cuts the part at a slower speed than the buyer later claims it hoped for.

If, as here, the purchase of the car was by a sophisticated commercial business, that had *agreed* that warranties of fitness and merchantability were excluded, and the purchaser had further failed to procure an applicable express warranty, the purchaser could not reclaim these bargained-away protections by mischaracterizing its alleged disappointment in the car's performance as a failure to deliver a "car" as required by the contract. Similarly, if the purchaser could not have justifiably relied on any representation of the car's performance, particularly where the contract recites the buyer's express agreement that it is not relying on any representations, there could also be no recovery in fraud. Concept's flawed analogy simply underscores the fact that the counterclaim fails to state a claim on which relief can be granted.

## II.     THE MOTION TO DISMISS COUNTERCLAIMS SHOULD BE GRANTED.[2]

### A. The Parties' Contract Bars Concept's Reliance-Based Claims of Fraudulent Inducement, Misrepresentation, and Promissory Estoppel. (Counts I, II, and IV)

Four of the counterclaims rely upon Concept's argument that Reis failed to deliver a Laser that complied with alleged "pre-purchase promises" as to cycle time in cutting a Silencer. The non-reliance clause of the contract unambiguously prohibits Concept from relying on the alleged "pre-purchase promises". The clause states in part:

> "Buyer represents that it *is not relying* on any such affirmation, agreement, representation or warranty…*unless it is specifically stated on this agreement*…" (Emphasis added) (Order Acknowl., CC, exhibit B at p. 32.)

Concept does not dispute or distinguish Reis's authority that non-reliance clauses preclude a contracting party from reasonably relying on representations occurring prior to execution, and that the clause is dispositive without a case-by-case inquiry into the reasonableness. Instead, Concept makes two arguments:

In a one-sentence argument, devoid of authority or reasoning, Concept suggests that the motion to dismiss is improper because the "fact finder" could conclude that the non-reliance clause of the contract simply explains "who has authority to amend the contract." (Response, p. 7.) Concept also illogically argues that notwithstanding the non-reliance clause, it was entitled to rely on the extrinsic "pre-purchase promises" because they meet the clause's requirement of being "specifically stated on this written agreement." (Response p. 7). Again, Concept suggests the "factfinder" could validate this *non sequitor*. Neither of these arguments have any merit.

### 1.   The Court, Not a Jury, Construes the Non-Reliance Clause.

Whether a contract is ambiguous is a question of law is to be decided by the Court from an examination of the instrument as a whole without first considering extrinsic evidence. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 875-76, 682 N.E.2d 101 (1997). A contract term is ambiguous if it can reasonably be interpreted in more than one way due to the indefiniteness of the language or due to it having a double or multiple meaning. *Zurich Midwest, Inc. v. St. Paul Fire & Marine Insurance Co.*, 159 Ill. App. 3d 961, 963, 513 N.E.2d

---

[2] To facilitate the Court's consideration, plaintiff has attached as Exhibit B to this Reply a chart of the counterclaims and Reis's dispositive arguments as to each.

59, 60 (1987). A contract is *not* ambiguous, however, if, as here, a court can ascertain its meaning from the general contract language. *Village of Glenview v. Northfield Woods Water & Utility,* 216 Ill. App. 3d 40, 48, 576 N.E.2d 238, 244 (1991).

2. The Non-Reliance Language Is Clear and Unambiguous

The strained meanings Concept suggests to sustain its position do not render the contract ambiguous. *Johnstowne Centre Partnership v. Chin*, 99 Ill. 2d 284, 288, 458 N.E.2d 480, 481 (1983) (fact that parties disagree as to meaning of term does not make that term ambiguous). The words "is not relying" could not be clearer.[3] There is no "double meaning" or "indefinite language" in the clause relied on by Reis to dispose of Concept's counterclaims.

Concept's assertion that the language could be construed as "simply an authorization clause, explaining who has authority to amend the contract, and under what circumstances" makes no sense. Under its interpretation the non-reliance language is surplusage. Furthermore, as the language is in the present tense (Concept "*is* not relying…") the clause cannot be referring to future modifications as Concept suggests. Its plain language should be given effect.

Concept's other argument that the extrinsic "pre-purchase promises" are somehow "specifically stated on this written agreement" is equally specious. Its only "authority" for this notion is its own flawed analogy arguing that a slow car is not a car at all. It concludes that it is for the "trier of fact" to determine "whether Reis's cycle time representations were incorporated by the parties' recitation of the system's required Application." This is nonsense. The only representations "specifically stated on" a document are those that appear within its four corners.

Concept's reasoning, if meritorious, would judicially eliminate the efficacy of a non-reliance clause in all cases. For example, sophisticated investors could claim that as a contract recited they were making an "investment", and because they made less money than had been promised outside the subscription agreement, it was not really an "investment" at all. Concept would, thus, argue all pre-subscription promises were actually in the agreement, and the investors should

---

[3] Concept volunteers in its response that under Michigan law the integration clause in the contract, without more, bars reliance on the pre-purchase promises. (Resp. p. 10.) As Concept is a Michigan business used to operating under this stricture, this fact, combined with the unambiguous non-reliance clause, underscores that Concept could not have reasonably relied on the alleged "pre-purchase promises." Indeed, assuming, *arguendo*, that Concept filed its Michigan lawsuit in the good faith belief that Michigan law governed, it must have believed at the time it signed the contract that it was doubly-barred by the contract from relying on the alleged representations.

be allowed to recover in fraud despite a contractual agreement that they were not relying on any pre-purchase representations. Obviously, this is not the law.

The clear and unambiguous language of the non-reliance clause negates all claims arising from the alleged pre-purchase representations.

3.  Concept's Authorities Do Not Undermine the Effectiveness of the Agreed Upon Non-Reliance Clause.

Finally, solidifying its fate on construction of the non-reliance clause, Concept fails to cite a single case discussing non-reliance clauses or distinguishing the case law cited by Reis. Rather, Concept desperately attempts a sleight-of-hand, citing numerous authorities for the proposition that *integration* clauses—not non-reliance clauses—cannot bar a claim for fraud. Integration clauses do not have the same meaning or legal effect as non-reliance clauses. *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 644 (7th Cir. 2002) (distinguishing integration clause from non-reliance clause). For example, defendant cites *Salkeld v. V.R. Bus. Brokers*, 192 Ill. App. 3d 663, 674, 548 N.E. 2d 1151, 1157-58 (1990), for the proposition that "a merger clause" will not bar a fraudulent inducement claim. Neither *Salkeld* nor any other case in Concept's irrelevant string-cite addresses non-reliance clauses. (See Response, p. 8,. fn. 3) Concept cites no case that interprets the language of a clause similar to "Buyer is not relying on any affirmation, agreement, representation or warranty concerning the Goods unless it is specifically stated on this written agreement…" as an "integration" clause or as unenforceable in similar circumstances. As such, there is no set of facts consistent with the complaint that supports Concept's reliance-based claims (fraud, misrepresentation and promissory estoppel).

Counts I (fraud), II (misrepresentation), and IV (promissory estoppel)[4] of Concept's Counterclaim should be dismissed for failure to state a claim on which relief may be granted.

**B. The Counterclaim for Negligent "Misrepresentation" is Also Barred by The *Moorman* Doctrine. (Count II)**

Concept does not dispute that, to the extent its misrepresentation claim alleges intentional misrepresentation, the claim is entirely duplicative of Count I for fraud. As such, to the extent

---

[4] Promissory Estoppel fails doubly: once because Concept's reliance was unreasonable, and secondly because existence of a valid contract bars the claim. *Infra*, section II D.

Count II alleges intentional misrepresentation it should be stricken in the unlikely event the fraud claim survives.

With respect to negligent/reckless misrepresentation, Concept misstates Illinois law, asserting that the contract falls within the exception to the *Moorman* Doctrine for conduct involving companies in the business of supplying information in the marketplace. Concept states:

> [T]he information supplied—programming, training, interfacing, testing—is transformed into the laser trimming system, *a situation the Illinois Supreme Court has held makes Reis a provider of information*. See *2314 Lincoln Park West Condo. Ass'n v. Mann*, 136 Ill. 2d 302, 313, 555 N.E.2d 346 (1990) (noting that in the usual construction case, "the information supplied . . . is transformed into the building"). Response, p.12. (Emphasis added.)

Actually, in *Mann*, the Illinois Supreme Court held precisely the opposite. *Mann* involved a claim against an architect who designed and certified the plaintiff's building. The *Mann* court held that because the information supplied by the architect was embodied in the product (the building), it was not of the type that warranted exclusion from *Moorman*. Contrary to Concept's argument, *Mann* actually held that the architect was *not* an information provider under *Moorman*, and barred the negligent misrepresentation claim on a motion to dismiss. *Mann, supra,* 136 Ill. 2d at 351, 353. Thus, based on Concept's characterization, under the *actual* result of the case, Reis is not an information provider within the context of *Moorman*.

In an effort to raise a factual question, Concept suggests that the "precise facts" of a case must be analyzed to determine whether *Moorman* applies, citing *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 27-28, 719 N.E.2d 288 (1st Dist. 1999) (courts must undertake a "precise, case-specific inquiry"). However, the *Tolan* Court held that where information is not the product being sold, but is simply ancillary or incidental to the sale, the *Moorman* exclusion is not triggered. *Id.* at 308 Ill. App. 3d 25, 719 N.E. 2d 294. The *Tolan* court explained that, to determine if a defendant 'is in the business of supplying information for the guidance of others in their business transactions', the specific inquiry is:

> "*[W]hether the end product of the relationship between plaintiff is a tangible object (i.e., a product) which could be readily described in a contract or whether it is intangible*. [Citation.] In short, if the intended end result of the plaintiff-defendant relationship is for the defendant to create a product, a tangible thing, *then the defendant will not fit into the 'business of supplying information' negligent misrepresentation exception.*" (Emphasis added)

6

*Id.* at 719 N.E. 2d 296 (citation omitted ). Here, the intended result was for Reis to create a "tangible thing," the Laser and its fixtures, not to "supply information." Indeed, Concept's counterclaim specifically alleges: "Reis is a merchant selling goods, including the Laser" (CC ¶3), and "Reis contracted to sell the Laser to Concept." (CC ¶ 69.) Recasting Reis as being "in the business of supplying information for the guidance of others in their business transactions" is inconsistent with the facts alleged in the counterclaim and with the prevailing law. The *Moorman* Doctrine bars the negligence claim and Count II should be dismissed with prejudice.

C.     **Concept's Claims For Breach of Contract and Breach of Express Warranty are Barred by the Contract. (Counts V and VI)**

1.     <u>The Claims should be Dismissed to the Extent They Are Premised on the "*Pre-Purchase* Promises".</u>

In an apparent reversal, Concept's Response now asserts that its Breach of Contract claim is based only upon representations in the contract, and not on the alleged pre-contract representations. Concept's stance manifests yet another change in position in which it now disclaims any implication that Concept's claims for breach of contract and warranty respectively, incorporated the "pre-purchase promises." (See Concept's Resp., p. 13: "Concept's Claims For Breach Of Warranty And Contract Rely On The Representations In The Contract, *Not On Pre-Purchase Promises*.") (Emphasis added.)

While Concept blames Reis for "misunderstanding" Concept's allegations, the fact is that Concept incorporated the "pre-purchase promises" by reference in the claims (CC ¶¶ 68, 73), and its "Summary of Counterclaims" (CC ¶ 1) fails to mention the breaches which it now states are the only basis of its contract claims. Concept's Michigan Complaint concerned only the "pre-purchase promises" and did not plead the written contract provisions on which it now relies. (Mtn. to Dismiss, Ex. 5.) Accordingly, Concept is being disingenuous in telling the Court that "Concept is asserting here the same breach of contract and warranty counts based on the same set of facts it alleged in Michigan." (Resp., p. 10; see also Ex. A, attached.)

To prevent this continued game, Reis requests that the Court now take Concept at its word, and, at a minimum, dismiss Counts V and VI for breach of contract and warranty to the extent that they are premised on representations and terms not contained in the written contract.[5]

As set forth below, because each of the allegations (both the new allegations in the Response, and the asides referencing the contract terms) are *still* barred by the contract terms, these counts should be dismissed *in toto*.

### 2.    The Express Warranties Are Barred And Voided By the Change In Specifications.

The breach of express warranties that Concept outlines in its Response fall into two categories: (1) that Reis expressly warranted a cycle time of 27.3 seconds for all three parts (Resp., p. 13); (2) "other [warranty] provisions in the Reis contract that are implicated by Reis's delivery of a laser trimming system incapable of satisfying its stated Application." (Resp. pp. 13-14). Throughout its pleadings, Concept has alleged that the cycle time it expected on the Silencer was 60-70 seconds, not 23.7. Its' effort to now assert that a cycle time obviously unrelated to the Silencer should nevertheless apply to the Silencer is untenable.[6]

Although not pleaded in its counterclaim, Concept is apparently reasoning that the warranty as to defects in materials and workmanship and the "other" non-warranty provisions not alleged in its counterclaim (e.g. that the laser "meets stringent standards") were breached because "the system is unable to achieve minimum cycle time." Concept's reasoning is a mere reiteration of its ongoing attempt to reclaim the implied warranty of fitness for a particular purpose that it bargained away in the warranty exclusion provision. The counterclaim should be dismissed to the extent it relies on this theory.

---

[5] While Concept points to paragraphs 11-12 of the counterclaim as examples of pleading specific contractual provisions, these are the only such paragraphs, and the mentions appear to be no more than descriptive asides that in the context of the counterclaim do not give reasonable notice of an intent to assert that these and various unidentified "additional representations and promises" contained in the contract are the basis of Concept's claims for breach. (See *McCready v. EBAY*, Inc., ___F. 3d__, 2006 WL 1881142 (7th Cir.) (passing reference to claim in complaint serves to hide rather than give notice of the claim, and does not prevent dismissal even in liberal context of *pro se* plaintiff)).

[6] Taken as now argued by Concept, Concept is claiming that it was fraudulently induced (Count I) to enter a contract warranting 23.7 second cycle time by reason of its reliance on representations that the laser would achieve a 60-70 second cycle time! The glaring inconsistency of that position defeats Concept's argument.

Conspicuously absent from Concept's response is any dispute of Reis's argument that a change in specifications voids the express warranties. (See Reis Memo., p. 6-7.) The failure to respond to this argument is a concession. See *Keller v. Sullivan, M.D.*, 928 F.2d 227, 231-232 (7th Cir. 1991) (failure to deny argument reasonably construed as tacit admission). The warranty provision was recited in Reis's opening memorandum. Concept does not refute that the written warranty expressly excludes warranties for fitness and merchantability, and that it was provided upon what Concept admits was "incomplete information" regarding the specifications of the Silencer part. Concept concedes that, at a minimum, the design of the Silencer changed months after it entered into the contract, increasing the size of the part by 30%. (CC, ¶ 22.). Indeed, it faults Reis for designing and manufacturing the fixtures when the specifications were not yet finalized. (CC, ¶28, 41). A warranty given based on a different part specification than the final specification is precisely the type of warranty that the parties agreed by contract would become null and void. Under the terms of the contract, the warranty is excluded as a matter of law.

Lastly, the presumption in commercial contracts is that the parties were attempting to do something rational. *Dispatch Automation v. Richards*, 280 F. 3d 1116, 1119 (7th Cir. 2002). Here, it is the ability of the Laser to cut a part of certain *specifications*, not of a certain name, that is warranted. To assert that the contract requires Reis's equipment to cut any part called a "Silencer" at a specific speed would be irrational. What if the part design grew 500%? Or the material to be cut was changed to cast iron? To hold Reis to warranting the cycle time of anything called a "Silencer" that Concept chose to manufacture, regardless of its size, composition or design would not be a reasonable construction of the contract before the Court.

Therefore, under the express terms of the contract, as well as general principles of contract interpretation, the changes in the specifications of the part preclude Concept from invoking the alleged warranty.

3. Concept Bargained Away Any Warranty of Fitness For Particular Purpose.

As set forth at the outset of this Reply, Concept asserts that the alleged pre-purchase promise of "60-70" seconds is somehow written into the contract, and that a breach is created by the equipment's failure to cut the final Silencer design in that time frame. Accordingly, Concept's position is that a failure of a product to be fit for a particular purpose (here the 60-70 second "Application") creates an implied breach of contract *independent* of the implied

warranty. Concept's argument is nothing more than a backdoor attempt to assert a claim for breach of the implied warranty of fitness for a particular purpose, after it bargained that warranty away.

In defending the viability of its claim, Concept simply refers back to the "no car" analogy as if the analogy constituted authority, yet cites no authority to supports its theory or the analogy. To establish such independent grounds for relief would render meaningless any agreed exclusion of the implied warranty and work a judicial repeal of the U.C.C. as adopted in Illinois (810 ILCS 5/2-316) which authorizes the exclusion.[7] Concept's effort to circumvent the excluded warranty should be rejected.

**D. The Alternative Promissory Estoppel and Unjust Enrichment Claims Are Barred. (Counts III and IV)**

Concept does not dispute that if there is an existing contract governing the transaction, then its claims for Unjust Enrichment and Promissory Estoppel should be dismissed. Accordingly, pursuant to the non-reliance clause, these claims necessarily fall with the fraud claim (Count I). (Reply, *supra*, p. 2-5)  That is, absent fraud, there can be no claim for rescission or quasi-contract relief.

The claims also fail for independent reasons. Reis explained that even if the claim for fraud survived the non-reliance clause, the contract would still stand because Concept was not seeking, and had not sought, rescission. In response, Concept asserts that rescission was effected, or that a trier of fact could so find. Again, Concept has ascribed to the jury a matter squarely within the purview of the Court under the facts at bar.

Notably, a claim for rescission is an equitable remedy, not pleaded in Concept's counterclaim for damages. As Reis pointed out in its initial brief, two essential elements are prompt rescission and tender of the goods. (Reis Memo, p. 10.) Concept does not deny that these are necessary elements. Rather, Concept cites four circumstances it claims could establish rescission, three of which concern when Concept could have learned of the alleged fraud and its alleged problems with the cycle time. (Resp., pp. 5-6.) However, Concept concedes (as it must) that, as it alleged,

---

[7] It is noteworthy that Concept's Michigan complaint contained a count for violation of the implied warranty of fitness for a particular purpose, as there it claimed that the contract terms did not include the written contract it now concedes governs the purchase, absent fraud. Its failure to include such a count here is an implicit concession that its unlabeled implied warranty claim is barred by the contract.

on December 21, 2005, "it became clear" to Concept that the laser would not meet the "promised" cycle time. (CC ¶ 25). Concept then suggests that an email, quoted in the counterclaim, rescinded the transaction with the following words:

> "Concept has come to the realization that the laser process does not provide the required capacity for the JS Dash program first year production requirements. As such, Concept is pursuing the implementation of an alternate production process." (Id. ¶ 25.)

Concept cites no authority suggesting that such words constitute rescission and tender under Illinois law and conspicuously omits the last words of the email. Concept's email ends:

> "Please place all production fixtures design work that is currently in-process on the LHD and RHD JS Dash Silencers *on hold*." (Emphasis added)

Reis argued that placing performance "on hold" is manifestly incompatible with an intent to rescind, as Concept implicitly retained the option to restart performance. Concept makes no reply to this argument and therefore tacitly concedes it. No reasonable trier of fact could find that these words constituted rescission and tender of the goods.

As paragraph 25 is the only allegation that Concept points to as alleging rescission of the contract, the counterclaim does not state a claim for rescission either explicitly or implicitly. Furthermore, Concept has pled itself out of court on this issue, because it included an allegation of fact showing that, after learning of the alleged fraud, it elected to retain the benefits of the contract. Therefore, pursuant to Concept's pleading, there is a subsisting contract, the existence of which defeats the claims.

Counts III and IV of the counterclaim should be dismissed with prejudice.

## E. Concept Fails to State a Viable Claim for "Overpayment". (Count VII)

Concept does not dispute that under the terms of the contract Reis had no obligation to allow cancellation as the contract expressly stated that Reis "shall have no obligation to modify…this agreement." (CC, ex. B, p. 32.) Therefore, Reis argues, Concept's allegations that it is entitled to a "cancellation credit" under the contract, for its refusal to fulfill its obligation to purchase the fixtures, has no legal basis.

Concept responds with two arguments. First, it asserts that "consistent with automotive industry practice, Reis always charged Concept only for authorized work, completed before cancellation." This statement seems dubious, given that Concept is claiming it overpaid under

that practice.  Still, Concept cites no authority suggesting that either automotive industry practice or the two previous occasions on which Reis consented to cancellation, operated to modify the contract and allow Concept to cancel it with Reis's consent and agreement.  No doubt, this is because Illinois law is otherwise.  810 ILCS 5/ 2-208(2) (if in conflict "express terms shall control course of performance" which in turn controls usage of trade).  Moreover, the contract states:

> "No waiver of any express provision of this agreement may be implied from any
> course of dealing among the parties hereto." (Order Acknowl., CC, Ex. B, p.32.)

Second, Concept argues that contracts may be orally modified.  Importantly, there is no allegation that an oral modification took place.  Given the existence of written terms governing modifications, an oral modification could contravene Illinois law. (see 810 ILCS 5/2-209 (2), (3) (signed agreement which excludes modification except by a signed writing cannot be otherwise modified); (statute of frauds applies to modifications)).  Generally, in Illinois, a contract modification must satisfy the same criteria required for a valid contract.  *Nebel, Inc. v. Mid-City National Bank of Chicago*, 329 Ill. App. 3d 957, 769 N.E.2d 45, 51 (2002). The counterclaim fails to allege the elements of an oral modification and gives no notice such is the claim against which Reis must defend.  Accordingly, the counterclaim fails to state a claim for relief under an oral modification of the contract.  Without such notice, Reis cannot prepare any defenses to such a claim, e.g., statute of frauds.  Moreover, the provision argued by Concept to afford "fair" compensation to Reis upon cancellation applies only to agreed cancellations that are not pleaded. The claim for overpayment should be dismissed.

## III.  THE MOTION TO STRIKE AFFIRMATIVE DEFENSES IS MERITORIOUS

Reis's motion to strike the various paragraphs of the Affirmative Defenses is well founded.

Paragraph One; Failure to State a Cause of Action.

Defendant stands on its disfavored, boilerplate pleading, again failing to address or distinguish plaintiff's pleaded authorities. As noted in its original memorandum, even where recognized as a defense, courts require the defendant to expound upon the boilerplate pleading and include sufficient details to apprise the plaintiff of the actual basis of the defense. *Builders*

*Bank v. First Bank*, 2004 WL 616827 (N.D. Ill.) Paragraph one of the defenses is properly stricken.

Paragraph Two; Breach of contract that "may be void".

Here, defendant ignores a central argument; that it failed to plead how or which paragraph of the contract plaintiff purportedly breached. On this basis alone, the defense is properly stricken. Plaintiff shall not properly be left to search the remainder of the pleadings and guess about which clause of the 33-page contract it supposedly breached. Moreover, defendant fails to address plaintiff's case citations, rendering its scant analysis wholly insufficient. It is undenied that under the current pleadings, defendant failed to rescind the contract. Accordingly, no re-pleading can salvage the defense, as the contract was not rendered void by any timely rescission or return of the product as a matter of law.

Paragraph Three; Fixture damages barred by lack of "authorization".

Defendant is plainly incorrect when it asserts that this defense raises factual issues that preclude striking the defense as a matter of law. Nothing in the contract required pre-production "approval" by Concept. Indeed, the contract expressly states that the only requirement prior to shipping is that the fixtures be completetly designed, built, assembled and test on Reis Laser Cells. (Order Acknowl., CC, Ex. B, at p. 19.) Furthermore, defendant ignores the arguments that the defense relies on doctrine external to the contract, and is simply a restatement of its denial of fixture damages. The defense is properly stricken for failing to state a defense upon which relief may be granted.

Paragraph Four; Reis's claims are subsumed by Concept's Counterclaim.

The defense is simply redundant of defendant's existing denial of plaintiff's damages (paragraphs 20-21), and is properly stricken with prejudice.

Paragraph Five; Reis's claims are barred/limited by laches, waiver, estoppel,etc.

At defendant's peril, it chooses not to address the cited case law that resoundingly holds the pleaded defense is improper and must be stricken, absent any pleading that sufficiently sets forth the various requisite elements of the equitable defenses. As set forth in the initial

memorandum, under the decisions in *Builders Bank, supra*, and *State Farm v. Riley*, 199 F.R.D. 276,279 (N.D. 2001), the paragraph is properly stricken.

<u>Paragraph Six</u>. The motion to strike paragraph six stands unopposed and is properly granted.


## IV. THE MOTION TO STRIKE PORTIONS OF THE ANSWER IS MERITORIOUS.

Plaintiff is prejudiced by the defendant's redundant, confusing pleadings and the designated portions of the Answer should properly be dismissed. Defendant's response to the Motion to Strike Portions of its Answer consists of its assertion that such motions are ill-favored and of its modest citation to cases that are either off point or support the motion. Defendant ignores the substantial body of case law supporting motions to strike and the quest of the courts to motivate litigants to plead in compliance with the applicable rules.

Conspicuously missing from Defendant's response is any effort to distinguish or address plaintiff's cited authorities. Each of plaintiff's case authorities squarely supports the motion and was completely ignored. Defendant similarly ignores Rule 10, never commenting on its requirement that affirmative matter be set forth only in separately enumerated paragraphs. Moreover, the repeated inclusion of its equivocal pleading about the contract at bar (i.e. "*to the extent* the alleged 'contract' created by" the purchase order . . .) establishes a conditional Answer that is neither an admission nor a denial. In short, the pleading simply confuses, rather than crystalizes, the issues at bar.

*Cumis Insurance Society v. Peters*, 983 F.Supp. 787 (N.D. 1997), cited by defendant supports plaintiff's motion. Defendant cites *Cumis* for the proposition that Rule 12(f) motions to strike are disfavored and that "redundant" pleading does not warrant dismissal. Defendant apparently failed to notice that the *Cumis* court *granted* relief to the plaintiff, striking a portion of defendant's answer upon a finding that the clause was redundant of matter pleaded elsewhere and tended to confuse the issues. *Id.* at 799.

Defendant's remaining authorities are unpersuasive. For example, where, as here, the pleading is non-responsive, creates confusion, and is thereby prejudicial, it cannot be characterized as simply "amplifying" the answer. Accordingly, *Warner & Swasey v. Held, 256 F. Supp. 303 (D.C. Wis. 1966)*, is factually distinguished from the defendant's pleading. Similarly,

*Brooks v. Heid*, 2006 WL 839430 (S.D. Ill.), is distinguished from the case at bar as the only issue advanced by the plaintiff in *Brooks* was that certain language in the answer was vague, ambiguous and superfluous. There, the court noted that the plaintiff failed to argue the merit of her motion and that "the court is certainly under no obligation to craft argument for her . . . " *Id.* at *1. No such situation exists at bar. The federal Rules and the case law in this district support the motion to dismiss paragraphs 5, 6, 7, 15, 16 and 20 of the Answer.

**Fees and Costs**.

Plaintiff should prevail in striking defendant's prayer for fees and costs. Defendant's Answer seeks fees and costs attributed to defendant litigating the defense of the breach of contract complaint. Defendant tacitly concedes that neither Illinois law nor the contract terms afford it a right to seek such relief. Instead, defendant asserts that it is simply "preserving its right to fees" that might arise elsewhere, such as pursuant to Rule 11. There is no Rule 11 motion pending and the argument is meritless. The prayer for fees and costs arising from defense of the breach of contract action should properly be stricken as unavailable under Illinois law.

**V.                                   CONCLUSION**

For the foregoing reasons plaintiff prays the Counterclaims, Affirmative Defenses, the stated paragraphs of the Answer, and defendant's prayer for fees and costs, be dismissed with prejudice.

s/  John R. Malkinson_____
Attorneys for Plaintiff/Counter-Defendant,
Reis Robotics USA, Inc.

Seth R. Halpern
John R. Malkinson
MALKINSON & HALPERN, P.C.
223 West Jackson Blvd., Suite 1010
Chicago, Illinois 60606
(312) 427-9600