

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **REIS ROBOTICS USA, INC.,** | ) | |
| **an Illinois corporation,** | ) | |
| | ) | **No. 06 CV 1430** |
| **Plaintiff,** | ) | |
| | ) | **Judge Ruben Castillo** |
| **v.** | ) | |
| | ) | |
| **CONCEPT INDUSTRIES, INC.,** | ) | |
| **a Michigan corporation,** | ) | |
| | ) | |
| **Defendant** | ) | |

## MEMORANDUM OPINION AND ORDER

This is a diversity action governed by Illinois law in which Plaintiff Reis Robotics USA,

Inc. ("Reis") filed a complaint against Defendant Concept Industries, Inc. ("Concept"), seeking

redress for breach of contract. Concept has answered the complaint, asserted six affirmative

defenses, and brought seven counterclaims against Reis. Reis now moves to strike and dismiss

Concept's affirmative defenses (R. 13); strike portions of Concept's answer (R. 17); and dismiss

Concept's counterclaims (R. 21). For the reasons set forth below, Reis's motions are granted in

part and denied in part.

### BACKGROUND

*1.*     *Reis's Allegations*

The following facts are taken from Reis's complaint. Reis, an Illinois corporation,

manufactures and supplies industrial robotics equipment. (R 1, Compl. ¶ 1.) Concept, a

Michigan corporation, manufactures and supplies automotive parts. (*Id.* ¶ 2.) On or about

February 24, 2005, the parties entered into a contractual arrangement for Concept to purchase

from Reis a robotic laser cutting machine (the "Laser") and associated fixtures for trimming

three separate automotive parts: the Hush Panel, JS Dash Silencer, and JS Dash Close Out Panel. (*Id.* ¶¶ 5, 9.) The pertinent contract documents are an "Order Acknowledgment" executed by Reis (R. 1, Compl. ¶ 6 & Ex. 1 (Order Acknowledgment)) and an "Amended Purchase Order" executed by Concept (R. 1, Ex. 2 (Purchase Order)).[1] For ease of reference, we refer to these documents collectively as "the Agreement."

While Reis was in the process of manufacturing the Laser and fixtures pursuant to the Agreement, Concept informed Reis that Concept had terminated the Hush Panel program and that the associated fixtures were no longer needed. (*Id.* ¶ 10.) The parties agreed to amend the purchase price of the Agreement to reflect the cancellation of the Hush Panel fixtures but to include payment for work performed. (*Id.* ¶ 11.) Following the cancellation of the Hush Panel fixtures, the amended purchase price of the Agreement was $911,000. (*Id.* ¶ 8.)

In July 2005, Reis presented and demonstrated the Laser to Concept. (*Id.* ¶ 14.) In August 2005, Concept informed Reis of changes to the JS Dash Silencer part. (*Id.* ¶ 16.) Concept's changes to the JS Dash Silencer part required Reis to redesign the associated fixtures. (*Id.* ¶ 16.) Reis alleges that Concept ordered these modifications under the Agreement, but Concept denies this allegation. (*Id.* ¶ 17.) Reis asserts that it is entitled to the original purchase price of the JS Dash Silencer fixtures and for work performed on their redesign and remanufacture. (*Id.* ¶¶ 18-19.)

In October 2005, Reis again presented and demonstrated the Laser to Concept. (*Id.* ¶ 14.) On October 3, 2005, Concept acknowledged receipt of the Laser at its Michigan facility by executing an Acceptance Test Certificate. (*Id.* ¶ 15.)

---

[1] The Court notes that both parties have attached copies of these documents to their pleadings. (*See* R. 1, Ex. 1 & 2; R. 11, Ex. B & C.)

In November 2005, Concept informed Reis that Concept had terminated the JS Dash Close Out Panel program and that the associated fixtures, which Reis was still working on, were no longer needed. (*Id.* ¶ 12.) Reis alleges that it was entitled to payment for work already performed on the JS Dash Close Out Panel fixtures prior to cancellation, a total of $6,900. (*Id.* ¶ 13.) Concept denies that Reis is entitled to payment of this amount. (R. 11, Answer ¶ 13.)

The parties agree that Concept has paid Reis $588,600 to date. (R. 1, Compl. ¶ 21; R. 11, Answer ¶ 21.) Reis asserts that Concept has breached the Agreement by failing to pay a remaining balance of $264,300 plus interest. (R. 1, Compl. ¶¶ 22-24.) Concept denies that it owes Reis any additional money under the Agreement. (R. 11, Answer ¶¶ 22-24.)

### 2.    ***Concept's Allegations***

The following additional facts are gleaned from Concept's "Answer, Affirmative Defenses and Counterclaim." (R. 11.) Concept alleges that prior to entering the Agreement, the parties engaged in extensive negotiations regarding the specifications of the Laser, particularly the Laser's cutting speed, also called "cycle time," meaning the time required to complete one part. (R. 11, Countercl. ¶ 1.) Throughout the negotiations, Reis, through its sales manager Dino Chece, allegedly made various oral and written promises to Concept indicating that the Laser would trim the JS Dash Silencer parts at a cycle time of 60-70 seconds per part or faster. (*Id.* ¶¶ 1, 5-10.) Relying on these promises by Reis, Concept entered into the Agreement. (*Id.* ¶ 11.)

The Agreement stated that the "Application" of the Laser was for the cutting of parts "described as Hush Panel/Panels Close/Silencer." (*Id.* ¶ 11; Ex. B (Order Acknowledgment) at 3.) The Agreement did not mention the 60-70 seconds cycle time, but did provide as follows:

> Necessary cycle time per component is indicated from Concept Industries with 23.7 sec per part including loading/ unloading and inspection. During our test in Chicago we were able to cut the parts in 17-20 sec. The table rotating time is 3 sec. The loading/unloading as

3

> well as inspection is done during [sic] the robot is cutting the part, therefore this time does not need to be added to the overall cycle. Reis Robotics is NOT responsible for the Operator related cycle times.

(*Id.* ¶ 11; Ex. B at 6.) The Agreement also contained an express warranty that the Laser would be free from defects in material and workmanship. (*Id.* ¶ 12; Ex. B at 31.)

According to Concept, at a demonstration of the Laser conducted by Reis on May 26, 2005, Concept personnel questioned Mr. Chece and Dr. Wenzel, Reis's general manager, about the Laser's apparent slow cutting speed of JS Dash Silencer parts during the demonstration. (*Id.* ¶ 13.) In response to Concept's concerns, Mr. Chece and Dr. Wenzel responded that the Laser was not yet optimized and that Concept had "nothing to worry about." (*Id.* ¶ 13.) When Concept accepted possession of the Laser at its facility, the certificate of acceptance indicated that cycle times "[c]annot be checked without the production fixture." (*Id.* ¶ 16.) Following the installation of the Laser at Concept's facility, Concept repeatedly expressed to Reis concerns regarding the cutting speed of the Laser. (*Id.* ¶¶ 15-26.) Concept repeatedly requested assurances from Reis that the cycle time for the JS Dash Silencer would be 60-70 seconds per part, as promised earlier by Mr. Chece. (*Id.* ¶¶ 15-26.) After it became clear to Concept that the Laser would be unable to achieve the promised cycle time, on December 21, 2005, a representative of Concept sent Reis an email informing Reis that "Concept is pursuing the implementation of an alternate production process" and requesting that Reis "place all production fixtures design work that is currently in-process on the LHD and RHD JS Dash Silencers on hold." (*Id.* ¶ 25.)

On January 6, 2006, Reis informed Concept in writing that the Laser's cycle time for the JS Dash Silencer would be between 150-195 seconds per part, far longer than what was originally promised. (*Id.* ¶ 26.) According to Concept, to date the Laser has failed to come close

to achieving the initially promised cycle time of 60-70 seconds per part, a defect that was "fatal" to Concept's ability to manufacture parts in the volumes required by its customers. (*Id.* ¶¶ 1, 26-27.)

As for the JS Dash Silencer fixtures, Concept alleges that it only authorized Reis to design the JS Dash Silencer fixtures and never authorized Reis to begin manufacturing the fixtures. (*Id.* ¶¶ 28-45.) According to Concept, between April and October 2005, the parties exchanged numerous communications through which both parties indicated that Reis would wait for Concept's final design approval prior to initiating any production of the JS Dash Silencer fixtures. (*Id.* ¶¶ 29-33.) Concept alleges that it never gave Reis final design approval and therefore is not responsible for any charges related to the production of the JS Dash Silencer fixtures. (*Id.* ¶ 28, 45.)

Concept also raises counterclaims against Reis for: (1) fraudulent inducement; (2) misrepresentation; (3) unjust enrichment; (4) promissory estoppel; (5) breach of contract; (6) breach of express warranty; and (7) overpayment. (*Id.* ¶¶ 46-81.) All of the claims are premised on the Laser's inability to achieve the cycle time allegedly discussed by the parties. (*See id.*)

## MOTION TO STRIKE AND DISMISS AFFIRMATIVE DEFENSES

We turn first to Reis's motion to strike and dismiss various portions of Concept's affirmative defenses.

## I.    Legal Standard

Federal Rule of Civil Procedure 12(f) permits the Court to strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because of their potential to delay proceedings. *Heller*

*Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Nonetheless, a motion to strike can be a useful means of removing "unnecessary clutter" from a case, which will in effect expedite the proceedings. *Id.*

Affirmative defenses are pleadings and, as such, are subject to all the same pleading requirements applicable to complaints. *Id.* Thus, affirmative defenses must set forth a "short and plain statement" of the basis for the defense. Fed. R. Civ. P. 8(a); *Heller*, 883 F.2d at 1294. Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted. *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000). "[B]are bones conclusory allegations" are not sufficient. *Heller*, 883 F.2d at 1295; *Surface Shields, Inc. v. Poly-Tak Prot. Sys. Inc.*, 213 F.R.D. 307 308 (N.D. Ill. 2003).

This Court applies a three-part test for examining the sufficiency of an affirmative defense. *Surface Shields*, 213 F.R.D. at 308; *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982). First, we determine whether the matter is appropriately pled as an affirmative defense. *Surface Shields*, 213 F.R.D. at 308. Second, we determine whether the defense is adequately pled under Federal Rules of Civil Procedure 8 and 9. *Id.* Third, we evaluate the sufficiency of the defense pursuant to a standard identical to Federal Rule of Civil Procedure 12(b)(6). *Id.* Before granting a motion to strike an affirmative defense, the Court must be convinced that there are no unresolved questions of fact, that any questions of law are clear, and that under no set of circumstances could the defense succeed. *Codest Eng'g v. Hyatt Int'l Corp.*, 954 F. Supp. 1224, 1228 (N.D. Ill. 1996). Additionally, in a case premised on diversity jurisdiction, "the legal and factual sufficiency of an affirmative defense is examined

with reference to state law." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). With these principles in mind, we turn to the specific arguments raised in the motion.

## II.  Analysis

For its first affirmative defense Concept asserts: "The complaint fails to state a claim upon which relief can be granted." (R. 11, Aff. Def. ¶ 1.) Reis argues that this is not a proper affirmative defense. (R. 14-1, Mem. In Supp. of Mot. to Strike at 2-3.) There is some debate in this District regarding whether "failure to state a claim" may be raised as an affirmative defense or instead must be raised by separate motion. *Compare, e.g., Instituto Nacional de Comercializacion Agricola v. Cont'l Ill. Nat'l Bank & Trust Co.*, 576 F. Supp. 985, 991 (N.D. Ill. 1983) (striking the affirmative defense of failure to state a claim because a true affirmative defense raises matters outside the plaintiff's complaint) *with Codest Eng'g*, 954 F. Supp. at 1231 (concluding that failure to state a claim may properly be asserted as an affirmative defense) *and Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp.*, 191 F.R.D. 568, 569 (N.D. Ill. 1999) (same). Notably, as one court in this District has observed, although failure to state a claim may not meet the technical definition of an affirmative defense, Form 20 of the Federal Rules of Civil Procedure's Appendix of Forms lists "failure to state a claim" as a model defense. *See Builders Bank v. First Bank & Tr. Co. of Ill.*, No. 03 C 4959, 2004 WL 626827 at *2 (N.D. Ill. Mar. 25, 2004). Rule 84 specifically authorizes the use of the model defenses contained in the Forms. Fed. R. Civ. P. 84. In light of Rule 84 and Form 20, we find authority under the Federal Rules to permit an affirmative defense based on failure to state a claim.

Nonetheless, Concept has failed to adequately plead the defense in accordance with Rule 8. Concept's first affirmative defense is nothing more than a recitation of the standard for a motion to dismiss under Rule 12(b)(6). As alleged, the defense provides no explanation as to

7

how and in what portion of the complaint Reis has failed to state a claim. *See Renalds*, 119 F.

Supp. 2d at 803-04 (striking failure to state a claim defense because it did not identify specific

infirmities in the complaint); *Codest Eng'g*, 954 F. Supp. at 1231 (striking failure to state a claim

defense that did not refer to any particular count of complaint and did not notify plaintiff of any

specific infirmities in complaint ). Although Concept's counterclaim contains detailed factual

allegations, these allegations are not mentioned or incorporated by reference in the affirmative

defenses. (*See* R. 11.) Additionally, it is not clear what portion of the lengthy counterclaim

allegations are intended to support Concept's failure to state a claim defense. The Court agrees

that clarity is needed as to the basis of this defense, and accordingly, the first affirmative defense

is stricken without prejudice.

As its second affirmative defense Concept states: "Reis breached the contract on which it

purports to rely, and that contract may be void for fraud and/or failure of consideration." (R.11,

Aff. Def. ¶ 2.) Breach of contract, fraud, and failure of consideration are all matters that may be

pled as affirmative defenses. *See* Fed. R. Civ. P. 8(c). However, the Court agrees with Reis that

Concept's defenses, as pled, do not satisfy the pleading requirements of Rule 8(a). The breach

of contract defense fails to make reference to any of the elements of a breach of contract claim,

and additionally, Concept fails to plead with heightened particularity the alleged circumstances

constituting fraud as required by Rule 9(b). *See Fidelity Nat. Title Ins. Co. of New York v.*

*Intercounty Nat. Title Ins.*, 412 F.3d 745. 748-49 (7th Cir. 2005). Again, although Concept has

included detailed allegations in its counterclaim, it does not link these allegations in any way to

the affirmative defenses, nor is it clear what particular paragraphs of the counterclaim allegations

would apply to this affirmative defense. Accordingly, the Court strikes Concept's second

affirmative defense without prejudice.

As its third affirmative defense, Concept alleges: "Reis's payment claims for the silencer fixture are barred because Concept never authorized Reis to begin manufacturing the fixture, as Reis itself has acknowledged." (R. 11, Aff. Def. ¶ 3.) Reis argues that this affirmative defense is legally inadequate. (R. 14-1, Mem. in Supp. of Mot. to Strike at 7-8.) The concept of an affirmative defense under Rule 8(c) "requires a responding party to *admit* a complaint's allegations but then permits the responding party to assert that for some legal reason it is nonetheless excused from liability (or perhaps from full liability)." *Menchaca v. Am. Med. Resp. of Ill.*, 6 F. Supp. 2d 971, 972 (N.D. Ill. 1998) (emphasis in original). Concept's third affirmative defense does not meet this criteria, but instead is merely a restatement of the denials contained in its answer. As such, the affirmative defense is not only unnecessary but also improper. *Renalds*, 118 F. Supp. 2d at 804; *Menchaca*, 6 F. Supp. 2d at 972. However, to the extent Concept intended to raise some affirmative matter here, the Court will give Concept an opportunity to replead. Accordingly, the third affirmative defense is stricken without prejudice.

As its fourth affirmative defense, Concept alleges: "Reis's claims are subsumed by Concept's right of set-off and/or recoupment. Alternatively, the amount of Concept's claims against Reis exceeds the amount of Reis's claim against Concept." (R. 11, Aff. Def. ¶ 4.) Reis argues that the affirmative defense is nothing more than a recapitulation of Concept's denial of the amount of damages claimed to be owed in the complaint. (R. 14-1, Mem. in Supp. of Mot. to Strike at 9.) In its response brief, Concept fails to offer any analysis refuting Reis's argument. (*See* R. 27, Concept Industries' Consolidated Resp. To Reis Robotics' Mots. To Strike Portions of the Answer and Aff. Defenses, and To Dismiss ("Consolid. Resp.") at 5-6.) The Court agrees that this affirmative defense appears to be simply a restatement of the denials contained in Concept's answer, which is improper. *See Renalds*, 118 F. Supp. 2d at 804; *Menchaca*, 6 F.

Supp. 2d at 972. However, to the extent Concept intended to raise some affirmative matter here, the Court will give Concept an opportunity to replead. The fourth affirmative defense is therefore stricken without prejudice.

Concept's fifth affirmative defense states: "Reis's claims are barred or limited by laches, waiver, estoppel, unclean hands, or similar legal or equitable doctrines." (R. 11, Aff. Def. ¶ 5.) Laches, waiver, estoppel, and unclean hands are equitable defenses that must be pled with the specific elements required to establish the defense. *See State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001). Merely stringing together a long list of legal defenses is insufficient to satisfy Rule 8(a). "It is unacceptable for a party's attorney simply to mouth [affirmative defenses] in formula-like fashion ('laches,' 'estoppel,' 'statute of limitations' or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense—which after all is the goal of notice pleading." *Id.* This is precisely what Concept has done here. Indeed, in asserting "similar legal or equitable doctrines," Concept fails to put Reis on notice as to even the legal bases for its defenses. Thus, the Court strikes Concept's fifth affirmative defense without prejudice.

Concept's sixth affirmative defense states: "Concept reserves the right to add additional affirmative defenses as they become known through discovery." (R. 11, Aff. Def. ¶ 6.) This is not a proper affirmative defense. If at some later point in the litigation Concept believes that the addition of another affirmative defense is warranted, it may seek leave to amend its pleadings pursuant to Rule 15(a); such a request will be judged by the appropriate standards, including the limitations set forth in Rule 12(b) and (h). Accordingly, Concept's sixth affirmative defense is stricken with prejudice.

## MOTION TO STRIKE PORTIONS OF DEFENDANT'S ANSWER

Reis next moves to strike various portions of Concept's answer for failing to comply with

Rule 8. (R. 18, Mem. in Supp. of R. 12(f) Mot. at 2-5.) Rule 8 provides in relevant part:

> A party shall state in short and plain terms the party's defenses to
> each claim asserted and shall admit or deny the averments upon
> which the adverse party relies. If a party is without knowledge or
> information sufficient to form a belief as to the truth of an averment,
> the party shall so state and this has the effect of a denial. Denials
> shall fairly meet the substance of the averments denied. When a
> pleader intends in good faith to deny only a part or a qualification of
> an averment, the pleader shall specify so much of it as is true and
> material and shall deny only the remainder.

Fed. R. Civ. P. 8(b). Reis argues that Concept has violated Rule 8 by including improper

qualifying language in Paragraphs 5, 6, and 7. Specifically, Reis objects to the following

language, which is contained in each of the aforementioned Paragraphs: "To the extent the

alleged 'contract' created by issuance of this purchase order failed to warrant the trim speed and

cycle time that Concept required, it was procured by fraud and was of no validity; accordingly,

the remaining allegations in this paragraph are denied as true." (R. 11, Answer ¶¶ 5-7.) Upon

review, the Court concludes that the above language does not constitute an admission or denial

of Reis's allegations as required by Rule 8; instead the language is equivocal and serves to

confuse the issues that are in dispute.

Similarly, Reis argues that Paragraphs 15, 16, 20 each contain language that does not

comport with Rule 8. (R. 18, Pl. Mem. in Supp. of Rule 12(f) Mot. at 2-4.) Upon review, the

Court finds that the last sentence of Paragraph 15, the last two sentences of Paragraph 16, and in

Paragraph 20, all of the language following the statement, "Concept denies these allegations as

untrue," renders the answers equivocal and improper under Rule 8. Accordingly, Paragraphs 5,

6, 7, 15, 16, and 20 are stricken with leave to amend. In repleading, Concept shall follow Rule

8(b)'s directive that it admit, deny, or state that it is without sufficient knowledge to admit or deny. To the extent Concept must give a qualified answer, Concept must "specify so much of it as is true and material and shall deny only the remainder." *See* Fed. R. Civ. P. 8(b).

Reis also seeks to strike Concept's prayer for attorneys fees and costs. (R. 18, Mem. in Supp. of Rule 12(f) Mot. at 4-5.) As a general matter, Illinois follows the "American rule," such that attorneys fees and costs are ordinarily not awarded to the prevailing party unless authorized by statute or provided for by contract. *McCormick v. McCormick*, 536 N.E.2d 419, 437 (Ill. 1988); *Quick & Reilly, Inc. v. Zielinski*, 713 N.E.2d 739, 744 (Ill. App. Ct. 1999). Concept responds that it is merely attempting to preserve its ability to obtain fees should it later be determined that it is entitled to do so. (R. 27, Consolid. Resp. at 4.) At this early stage of the litigation, the Court cannot determine as a definitive matter that fees and costs are wholly unavailable to Concept. Thus, the Court declines to strike the request for attorneys fees and costs.

## MOTION TO DISMISS COUNTERCLAIMS

### I.    Legal Standard

Reis next moves to dismiss each of Concept's seven counterclaims pursuant to Rule 12(b)(6). (R. 22-1, Mem. in Supp. of Mot. to Dismiss) This Court will only dismiss a claim if it appears "beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). In considering a Rule 12(b)(6) motion, we draw all reasonable inferences in favor of the plaintiff, or in this case the counterplaintiff, and accept as true all well-pleaded factual allegations. *Id.* Further, the purpose of a Rule 12(b)(6) motion is solely to "test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The

Seventh Circuit has repeatedly emphasized the liberal notice pleading requirements that apply in federal court. *See, e.g., Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (explaining that "I was turned down for a job because of my race" is sufficient to state a claim for racial discrimination and survive a 12(b)(6) motion).

Additionally, in deciding a Rule 12(b)(6) motion, the Court is bound by the allegations within the complaint. However, a copy of a written instrument attached as an exhibit to a complaint, such as the operative contract documents in this case, may be considered. Fed. R. Civ. P. 10(c); *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

## II. Analysis

As an initial matter, Reis argues that much of Concept's counterclaim pleading is "highly verbose" and "argumentative," and should be stricken for failing to comport with Rule 8(e)'s directive that "[e]ach averment of a pleading shall be simple, concise and direct." (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 15.) The Seventh Circuit has held, however, that when a pleading adequately performs the notice function prescribed by the Federal Rules, the presence of extraneous material does not warrant dismissal under Rule 8(e). *Davis v. Ruby Foods*, 269 F.3d 818, 820-21 (7th Cir. 2001). Dismissing claims merely because of the presence of superfluous material "would cast district judges in the role of editors, screening complaints for brevity and focus; they have better things to do with their time." *Id.* at 820. While the Court agrees that Concept's pleading is not necessarily a model of legal draftsmanship, it adequately

13

performs its required function of giving notice to Reis of the relevant facts and legal basis of

Concept's claims. Accordingly, we decline to strike the counterclaims on this ground.

### A. Whether Concept's Fraud-Based Claims Are Barred By The Seventh Circuit's Opinion In *Rissman*.

Reis first argues that Concept's claims for fraudulent inducement, misrepresentation and

promissory estoppel do not state valid causes of action. (R. 22-1, Mem. in Supp. of Mot. to

Dismiss at 4-5.) All three of these claims are premised on alleged misrepresentations by Mr.

Chece regarding the Laser's cutting speed. Reis points to a non-reliance clause contained in the

Agreement, which states:

> AUTHORITY: No agent, employee or representative of [Reis] has any
> authority to bind [Reis] to any affirmation, agreement, representation or
> warranty concerning, and Buyer represents that it is not relying on any
> such affirmation, agreement, representation or warranty concerning, the
> Goods unless it is specifically stated on this written agreement and is
> executed in advance by two managers or officers of [Reis].

(Countercl., Ex. B at 32.) Reis argues that the Seventh Circuit's opinion in *Rissman v. Rissman*,

213 F.3d 381 (7th Cir. 2000), automatically bars fraud claims based on pre-contractual

statements where the contract contains a non-reliance provision. (R. 22-1, Mem. in Supp. of

Mot. to Dismiss at 4.) We do not find this argument persuasive.

In *Rissman*, the plaintiff sold his shares of a business to the defendant, who was a co-

owner in the business, in alleged reliance on the defendant's oral representation that he would

never sell the business to a third-party. *Rissman*, 213 F.3d at 382. The oral promise was not

included in the written stock purchase agreement. *Id.* at 383. To the contrary, the stock

purchase agreement specifically provided for accelerated payments of the purchase price in the

event that the business was sold. *Id.* The stock purchase agreement also included a non-reliance

provision. *Id.* After the defendant sold the business, the plaintiff sued for federal securities

fraud and also raised related state law claims. *Id.* at 382. In concluding that the plaintiff could not have reasonably relied on the defendant's representation that he would not sell, the Seventh Circuit pointed to both the non-reliance provision and the contract provision specifically discussing the possibility of a sale. *Id.* at 383.

Contrary to Reis's argument, the Seventh Circuit's rejection of the fraud claim in *Rissman* was based, not on the mere presence of the non-reliance clause, but on the presence of the non-reliance clause in conjunction with a provision that clearly contradicted the plaintiff's prior statement. *Id.* at 383 ("Having signed an agreement providing for acceleration as a consequence of sale, [plaintiff] is no position to contend that he relied on the impossibility of sale."). Accordingly, at least one District Court in this Circuit has read *Rissman* to hold only that parties to a contract cannot rely on pre-contractual statements that directly contradict the express terms of the written agreement. *See Hartmax Corp. v. JBA Int'l, Inc.*, No. 99 C 4874, 2002 WL 406973, at *4 (N.D. Ill. Mar. 15, 2002) (rejecting argument that *Rissman* creates automatic bar to fraud claim whenever contract contains non-reliance clause, because underlying rationale of *Rissman* is solely that "a person who has received written disclosure of the truth may not claim to rely on oral falsehoods"). Because we find nothing in the Agreement directly contradicting the statements attributed to Mr. Chece, we decline to apply *Rissman* as requiring dismissal of Concept's fraud claims at the pleading stage.

Moreover, under Illinois law, whether a plaintiff's reliance on false statements was justified is a question of fact. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip.*, 250 F.3d 570, 574 (7th Cir. 2001); *see also Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 386 (Ill. App. Ct. 2002) ("[J]ustifiable reliance . . . is a question of fact . . . to be determined by the finder of fact and not by the trial court as a matter of law."). The issue may be determined by the Court as a matter of

law when, under the circumstances, no trier of fact could find that the reliance was reasonable. *Cozzi*, 250 F.3d at 574. Based on Concept's allegations regarding the statements about cycle time, and the manner in which these statements were alleged to have been made, the Court does not find this standard to be met here and therefore declines to dismiss the fraud-based claims.

### B. Whether The Fraud-Based Claims Are Barred Because Reis's Statements Regarding Cycle Time Were Not Promises.

Reis next argues that Concept's claims for fraudulent inducement, misrepresentation, warranty, and promissory estoppel are barred because the alleged misrepresentations regarding cycle time constituted statements of opinion that were "ambiguous and not promises." (R. 22-1, Memo. in Supp. of Mot. to Dismiss at 5-6.) Under Illinois law, statements of opinion will not support a fraud claim; instead, a misrepresentation must be considered a statement of fact to be actionable. *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 92 (Ill. App. Ct. 2002). Drawing all reasonable inferences in favor of Concept and accepting its allegations as true, we find that Concept has alleged misrepresentations by Reis that could be construed as factual statements. For instance, Concept has alleged: "Concept's personnel asked Mr. Chece how long it would take to cut a part similar to the P221 Dash Silencer on Reis's Laser, and Mr. Chece said '60 seconds.'" (R. 11, Countercl. ¶ 5.) Additionally, Concept alleges that Mr. Chece twice stated that the cycle time would be 60-70 seconds, with even "better" times expected once Reis had an opportunity to engineer the system. (*Id.* ¶¶ 9-10.) The Court does not find these statements patently "vague" or "equivocal," as Reis suggests. (*See* R. 22-1, Mem. In Supp. of Mot. to Dismiss at 6.)

Moreover, under Illinois law, statements of opinion are treated as statements of fact when, under the circumstances, the plaintiff justifiably relied on the opinion as though it were a statement of fact. *West v. W. Cas. & Sur. Co.*, 846 F.2d 387, 393-94 (7th Cir. 1988); *Schrager*,

767 N.E.2d at 382. In other words, when the defendant states as an affirmative fact a matter that might otherwise be considered an opinion, the statement becomes an affirmation of fact within the meaning of the rule against fraudulent misrepresentation. *Schrager*, 767 N.E.2d at 382. If Concept can show it reasonably understood Mr. Chece's statements about cycle times to be statements of fact in light of the circumstances in which they were made, his assertions will be treated as statements of fact, regardless of whether they were intended as an opinion. Because we cannot conclude beyond doubt that Concept can prove no set of facts supporting its claims based on Mr. Chece's alleged misstatements, we decline to dismiss these claims at the pleading stage.

Additionally, Concept argues, and we agree, that its breach of warranty claim is premised on specific provisions of the contract, not on pre-purchase statements made by Mr. Chece. (*See* R. 27, Consolid. Resp. at 13-14; R. 11, Countercl. ¶ 11.) Thus, any ambiguity in the statements made by Mr. Chece would be irrelevant to the breach of warranty claim. We therefore decline to dismiss this claim as well.

### C. Whether Illinois' "Mend The Hold" Doctrine Bars Concept's Fraudulent Inducement Claim.

Next Reis argues that Concept's fraudulent inducement claim is barred because the "mend the hold" doctrine precludes Concept from changing the grounds on which it refused to perform the contract. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 8-9.) The mend the hold doctrine is a rule of Illinois contract law providing that, under certain circumstances, a party may not change the grounds for refusing to perform a contract once he has asserted a defense. *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F. 2d 357, 363-64 (7th Cir. 1990) (citing *Larson v. Johnson*, 116 N.E.2d 187 (Ill. 1953)).

Reis argues that Concept is barred from claiming fraud in the inducement because Concept also seeks breach of contract remedies, which effectively concedes the validity of the contract. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 8.) However, we find this argument unavailing because the Seventh Circuit has held that the mend the hold doctrine does not apply at the pleading stage.[2] See Harbor Ins. Co., 922 F.2d at 364 (observing that mend the hold doctrine does not make sense at the pleading stage because "Rule 8(e)(2) permits a party to state as many separate claims or defenses as the party has regardless of consistency"); Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1252 (7th Cir.1996) (observing that under mend the hold doctrine party may not repudiate a position taken in the course of the litigation once the pleadings are complete). Because this case is at the pleading stage, we do not believe dismissal to be appropriate on this ground. Moreover, the purpose of the doctrine is to prevent a party from prejudicing its opponent by repudiating a position taken earlier in the litigation; the rule is meant to afford the opposing party a reasonable opportunity to formulate its defenses. Horwitz-Matthews, 78 F.3d at 1252. We find no such danger of prejudice to Reis at this stage of the proceedings. For these reasons, we decline to dismiss the fraudulent inducement claim.

### D.   Whether Concept's Negligent Misrepresentation Claim is Barred By The Moorman Doctrine.

---

[2] To the extent Reis is arguing Concept may not raise a fraud claim in light of the claims raised in an earlier filed case in Michigan state court, we do not believe the mend the hold doctrine precludes a party from asserting a position different from that asserted in a separate lawsuit. See Harbor Ins., 922 F.2d at 364. Concept argues that it did not assert a fraud claim in the Michigan suit because such a claim would have been barred by Michigan law. (R. 27, Consolid. Resp. at 10.) Although it is not clear based on the documents before the Court, it may be that Concept is barred from relitigating issues resolved on the merits in the Michigan state court case based on the related doctrine of res judicata. See Harbor Ins., 922 F.2d at 364. Reis does not raise a res judicata argument here, and we have not been apprised of the status of the Michigan case.

Reis next argues that Concept's claim for negligent misrepresentation is barred by the Illinois Supreme Court's holding in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982). *Moorman* prohibits a plaintiff from recovering under a negligence theory for purely economic damages, that is, damages not based on personal injury or property damage. *Id.* at 450-51; *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 294 (Ill. App. Ct. 1999). There is no dispute here that Concept is seeking solely economic damages; nonetheless, there is an exception to the *Moorman* doctrine where the plaintiff's damages are caused by the negligent misrepresentation of a defendant who is "in the business of supplying information" for the guidance of others in their business transactions. *First Midwest Bank N.A. v. Stewart Title & Guar. Co.*, 843 N.E.2d 327, 335 (Ill. 2006); *Tolan*, 719 N.E.2d at 294. Concept argues that there is "at least a fact question as to whether Reis was in the business of supplying information," such that the Court should permit the negligent misrepresentation claim to proceed. (R. 27, Consolid. Resp. at 12.) We do not agree.

Illinois cases hold that when information supplied by the defendant is merely ancillary to the sale of a product or service, the defendant is not in the business of supplying information for purposes of *Moorman*. *2314 Lincoln Park W. Condo. Ass'n v. Poor's Corp.*, 555 N.E.2d 346, 350-52 (Ill. 1990); *Tolan*, 719 N.E.2d at 296. Indeed, "a great many businesses involve an exchange of information as well as of tangible products;" however, if the true purpose of the parties' agreement is for the defendant to create a product, then the defendant is not in the business of supplying information. *2314 Lincoln Park W.*, 555 N.E.2d at 351. Concept's citation to *2314 Lincoln Park West* is unavailing, since in that case the Illinois Supreme Court held that an architect's provision of information regarding a building's design and construction was simply incidental to the architect's provision of a tangible object, namely, the building. As

19

such, the Court concluded that the architect was not in the business of providing information and could not be sued for negligent misrepresentation. *Id.*

Although Concept is correct that the Court must make a case-specific analysis to determine whether the defendant was in the business of supplying information, *see Tolan*, 719 N.E.2d at 296, based upon the pleadings it is apparent that the true purpose of the parties' agreement in this case was the sale of the robotic equipment manufactured by Reis. Even liberally construing Concept's allegations, it is apparent that Reis is in the business of manufacturing and supplying robotic equipment, not in the business of providing information for the guidance of others in their business transactions. *See 2314 Lincoln Park W.*, 555 N.E.2d at 351; *see also Rankow v. First Chicago Corp.*, 870 F.2d 356, 361 (7th Cir. 1989) (collecting cases holding that under Illinois law manufacturers of products are not in business of providing information). To the extent Reis supplied information about the robotic equipment to Concept, this information was simply incidental to the sale of the Laser. Accordingly, we dismiss the negligent misrepresentation claim with prejudice pursuant to *Moorman*.

### E.    *Whether Concept's Claims For Unjust Enrichment And Promissory Estoppel Are Barred By The Existence Of The Contract.*

Reis next argues that the existence of a contract between the parties bars Concept's counterclaims for unjust enrichment and promissory estoppel. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 9-12.) To state a claim for unjust enrichment under Illinois law, the plaintiff must establish that the defendant received a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit would be unjust. *TRW Title Ins. Co. v. Sec. Union Title Ins. Co.*, 153 F.3d 822, 828 (7th Cir. 1998) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). To state a claim for promissory estoppel, the plaintiff must allege that the defendant made an unambiguous promise to the plaintiff, the plaintiff relied

20

on such promise, the plaintiff's reliance was expected and foreseeable by defendants, and the plaintiff relied on the promise to its detriment. *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990).

Reis is correct that both theories presume the absence of a valid contract. *See People ex rel. Hardigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992); *Prentice v. UDC Advisory Serv.*, 648 N.E.2d 146, 150 (Ill. App. Ct. 1995). However, at this stage Concept is permitted to plead in the alternative claims of breach of contract and equitable theories premised on the lack of a binding contract. *See* Rule 8(e)(2); *Hawthorne Partners v. AT&T Tech.*, 831 F. Supp. 1398, 1406 (N.D. Ill. 1992). If the contract is held to be invalid due to fraud or for some other reason, Concept may be able to recover under one of its equitable theories. Of course, Concept may not recover under both its contract-based and equitable theories, *see Hawthorne Partners*, 831 F. Supp. at 1406, but that is not a concern at this stage of the proceedings.

Reis appears to argue that the unjust enrichment and promissory estoppel claims nevertheless fail because Concept's claim that the contract is void due to fraud lacks merit. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 10.) Under Illinois law, a contract procured by fraud is merely voidable, as opposed to automatically void, which would require the party alleging fraud to have taken action to rescind the contract. *City of Chicago v. Mich. Beach Hous. Coop.*, 696 N.E.2d 804, 809 (Ill. App. Ct. 1998). Reis argues that Concept failed to take adequate steps to rescind the contract such that the contract is now binding. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 10.) This argument presumes that Concept's fraudulent inducement and related claims fail on the merits, which is not a determination to be made by the Court at this stage in the proceedings. As discussed above, the Court is permitting the fraudulent inducement claim to proceed. Further, whether Concept took action to rescind the contract is a matter in dispute.

21

(*See* R. 27, Consolid. Resp. at 4-6, 12-13 (citing R. 11, Countercl. ¶¶ 15-25).) The sole issue at this stage is whether Concept has adequately alleged claims for unjust enrichment and promissory estoppel; the Court may not dismiss these claims unless it is beyond doubt Concept can prove no set of facts entitling it to relief. *Tobin*, 268 F.3d at 521. The Court does not find this standard to be met, and therefore will allow these claims to proceed.

### F. *Whether Concept's Contract-Based Claims Fail As A Matter Of Law.*

Reis next argues that Concept's counterclaims for breach of contract, breach of express warranty, and overpayment fail as a matter of law. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 12-14.) First, Reis argues that Concept's claim for breach of contract fails because the alleged breach is based solely on pre-purchase promises regarding cycle time which are negated by the Agreement's integration clause. Upon review, the Court concludes Concept is not relying solely on pre-purchase statements in support of its breach of contract claim. Construing the allegations in the light most favorable to Concept, Concept has alleged the existence and breach of express provisions contained in the Agreement. (*See* R. 11, Countercl. ¶¶ 11-12, 73-77.) Similarly, as to the warranty claim, Concept has alleged the existence and breach of an express warranty in the contract that the Laser would be free from defects in material and workmanship. (R. 11, Countercl. ¶¶ 12, 73-77.) At this stage, the Court finds these allegations sufficient.

As to the overpayment claim, Concept asserts: "Concept has made payments under the purported contract totally \$588,600. The work Reis performed and Concept authorized totals approximately \$504,300. Reis is liable to Concept for the Concept overpayment." (Countercl. ¶¶ 79-81.) Reis argues that Concept's claim for overpayment fails to state a viable claim under state law. (R. 22-1, Mem. in Supp. of Mot. to Dismiss at 14.) In its response brief Concept fails to explain the legal basis for this claim, nor is the legal basis apparent to the Court. (*See* R. 27,

Consolid. Resp. at 14.) Concept suggests its recovery for "overpayment" is warranted based on a subsequent oral modification that was made to the Agreement. (*Id.*) However, there are no allegations within Concept's counterclaim that an oral modification occurred. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (brief in opposition to a motion to dismiss may not amend complaint). Even drawing all inferences in favor of Concept, we find that Concept has failed to state a claim for overpayment. Thus, the overpayment counterclaim is dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Reis's motion to strike affirmative defenses (R. 13), motion to strike portions of Concept's answer (R. 17), and motion to dismiss Concept's counterclaim (R. 21) are granted to the extent that:

1.  Concept's first, second, third, fourth, and fifth affirmative defenses are stricken without prejudice;

2.  Concept's sixth affirmative defense is stricken with prejudice;

3.  Paragraphs 5, 6, 7, 15, 16, and 20 of Concept's answer are stricken without prejudice;

4.  Concept's negligent misrepresentation counterclaim is dismissed with prejudice;

5.  Concept's overpayment counterclaim is dismissed without prejudice.

Reis's motions are denied in all other respects. Concept shall file and serve an amended pleading that conforms to this order within 30 days of the date of this order.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: November 6, 2006**

23